UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ESTATE OF BRIAN SZUFLITA; *et al.*, )<br>)<br>  **Plaintiffs**, )<br>)<br>  v. )<br>)<br>THE CITY OF SOUTH BEND, INDIANA; )<br>*et al.*, )<br>)<br>  **Defendants**. ) | No. 3:10 CV 346 |

### OPINION and ORDER

This matter is before the court on defendants' motion for summary judgment. (DE # 16.) For the reasons set forth below, defendants' motion is granted.

**I.    BACKGROUND**

The following facts are not genuinely disputed. At approximately 2:19 p.m. on July 25, 2008, South Bend Police Officers Joshua Morgan and Chris Slager were dispatched to the 1st Source National Bank in South Bend, Indiana, to investigate a robbery. The suspected robber matched the description of an individual who had robbed the same bank about a week prior. Dispatch advised the officers that the robber had indicated that he had a weapon in the bank, but never displayed it.

After arriving at the bank, the officers took up position in the parking lot. An individual, later identified as Brian Szuflita, sprinted out of the bank. The officers chased Szuflita into a nearby field, while yelling "Police, Stop" several times and threatening the use of a taser. While chasing Szuflita, the officers "saw the dye pack

disburse from [Szuflita's] person" (DE # 17-3 at 2; DE # 17-4 at 2) and believed that Szuflita had robbed the bank.

While the officers were chasing Szuflita, Szuflita suddenly turned around in the field with a knife. At this point, Szuflita was approximately 3-4 feet away from Officer Morgan. Officer Slager stood at an undentified but presumably further distance. Szuflita then "made aggressive motions towards Officer Morgan with the knife." (DE # 17-4 at 2; DE # 17-3 at 2.) Officer Morgan attested that he backed away from Szuflita "while [Szuflita] was aggressively advancing towards me and in the process fired 9 shots at [Szuflita] until the point when [Szuflita] stopped advancing towards me and fell to the ground." (DE # 17-3 at 2.) Officer Slager also fired 7 shots at Szuflita "until the point when [Szuflita] stopped advancing towards Officer Morgan and [Szuflita] fell to the ground." (DE # 17-4 at 2.) Szuflita was struck 11 times, and died of the gunshot wounds.

Both officers attested via affidavit that when Szuflita turned around in the field and made aggressive motions towards Officer Morgan when he was approximately 3-4 feet away from Officer Morgan, they believed that they were in imminent danger of serious physical harm. (DE # 17-3 at 2; DE # 17-4 at 2.) The officers further stated that when they decided to shoot, Szuflita was ignoring police commands to stop and was advancing towards an officer with a deadly weapon. (DE # 17-3 at 2-3; DE # 17-4 at 2.) The officers also attest that they believed they used the amount of force necessary to

keep themselves from being seriously harmed by Szuflita. (DE # 17-3 at 2; DE # 17-4 at 2.)

On July 23, 2010, Szuflita's estate and children filed suit in Indiana state court against the City of South Bend, Indiana, the South Bend Police Department, and Officers Morgan and Slager, alleging violations of 42 U.S.C. § 1983, the statute that permits lawsuits against persons acting under color of law for violations of constitutional rights. (DE # 1.) Defendants removed this suit to this court pursuant to 28 U.S.C. § 1441, the statute that grants federal district courts original jurisdiction over claims arising under the laws of the United States, such as Section 1983. (DE # 2.)

Defendants have now moved for summary judgment, arguing that plaintiffs lack any factual basis for a suit against the City, Police Department, or the officers in their official capacities. (DE # 16.) As for plaintiffs' claims against the officers in their individual capacities, defendants argue that there is no genuine dispute as to any material fact regarding the reasonableness of the officers' conduct, warranting summary judgment in their favor. (*Id.*) Plaintiffs responded (DE ## 23-24), and defendants replied (DE # 25). The motion is fully ripe for ruling.

II.     **LEGAL STANDARD**

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S.

317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex*, 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at

4

255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

### III.   DISCUSSION

#### A.   Timeliness of Defendants' Summary Judgment Motion

In response to defendants' motion for summary judgment, plaintiffs argue that defendants' motion for summary judgment was filed 31 days after the dispositive motion deadline set by the court and is therefore untimely. (DE # 23-1 at 1.) However, as defendants point out (DE # 25-1 at 1), defendants filed their motion on August 29, 2011, which was the dispositive motion deadline set by this court on June 20, 2011. (Minute Entry following DE # 14.) Accordingly, plaintiffs' timeliness argument has no merit.

#### B.   Claims Against Municipalities and Officers in Their Official Capacities

Defendants first move for summary judgment on plaintiffs claims against the City of South Bend and the South Bend Police Department. Defendants argue that the record contains no evidence supporting a claim against the City of South Bend under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and that the South Bend

Police Department is not a separate entity from the City of South Bend and does not have the capacity to sue or be sued. Plaintiffs agree that summary judgment is appropriate as to these claims. (DE # 24-1 at 4.)

Defendants also move for summary judgment on plaintiffs' claims against Officers Morgan and Slager in their official capacities because there is no distinction between claims against officers in their official capacities and the municipal entity that employs them– in this case, the City of South Bend. (DE # 17-1.) Defendants' assertion is correct. *Yeksigian v. Nappi,* 900 F.2d 101, 103 (7th Cir. 1990) ("A suit against a municipal official in his official capacity is construed as a suit against the municipality."). In the preceding paragraph, the court granted summary judgment for defendants on plaintiffs' claims against their municipal employer, the City of South Bend. Accordingly, summary judgment is also appropriate with respect to the officers in their official capacities.

### C. Claims Against Officers in Their Individual Capacities

The parties have presented two questions with regard to plaintiffs' claims against the officers in their official capacities: (1) whether such claims were adequately pleaded in the complaint; and (2) whether defendants are entitled to summary judgment on the merits of these claims. Each issue is addressed in turn below.

#### 1.  *Adequacy of Pleading of Individual Capacity Claims*

Defendants argue that plaintiffs have asserted no "individual capacity" (also known as a "personal capacity") claims against the officers, only "official" capacity

claims. In *Kentucky v. Graham,* 473 U.S. 159 (1985), the United States Supreme Court articulated the difference between individual (or personal) capacity suits on one hand, and official capacity suits on the other hand. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," the *Graham* court explained. *Id.* at 165. "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165-66 (quoting *Monell,* 436 U.S. at 690). The Court further explained the different standards for establishing liability, depending on the capacity implicated: "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. . . . More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Id.* at 166 (internal citations and quotation marks omitted). Finally, the court noted that "[w]hen it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable." *Id.* at 167.

  Defendants point to the caption of plaintiffs' complaint, which states, after each officer's name, the words "in His Official Capacity." (DE # 1 at 1.) Defendants argue that these words demonstrate that plaintiffs never intended to pursue individual

capacity claims against the officers personally, only official capacity claims against the officers as agents of the South Bend Police Department. However, courts are to give effect to the substance of a document, not its caption. *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002).

In *Miller v. Smith*, 220 F.3d 491 (7th Cir. 2000), the Seventh Circuit Court of Appeals applied this principle by examining the substance of a complaint which did not explicitly designate claims as being "individual capacity" claims. The court held that the contents of the complaint made it clear that the plaintiff intended to sue the defendant police officers in their individual capacities because "at no time did [the plaintiff] suggest that either Indiana or LaGrange espoused a custom or policy of robbing and beating innocent motorists," an allegation that would have been indicative of a plaintiff's intent to assert an official capacity claim. *Id.* at 494; *see also Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) (plaintiff's complaint should have been construed as containing an individual capacity claim because "the unconstitutional conduct alleged involve[d] [the defendant's] individual actions and nowhere allude[d] to an official policy or custom").

Like the plaintiff in *Miller,* the plaintiffs in this case do not allege that the defendant officers operated pursuant to an unconstitutional policy or custom. Rather, plaintiffs' complaint alleges that its injuries occurred "[a]s a direct and proximate cause of these shootings" (DE # 1 at 2) and that the officers engaged in a "willful violation" of the law "under color of law," which resulted in the death of Brian Szuflita and, in turn,

their own injuries (*id.* at 2-3). These allegations put the defendant officers on notice that they were being sued for their individual actions taken under color of state law, not merely as agents of a governmental entity which promulgated an unconstitutional policy or custom.[1] For these reasons, defendants' argument that plaintiffs have not asserted any individual capacity claims in this lawsuit is rejected.

        2.      *Defendants' Motion for Summary Judgment on Official Capacity Claims*

Every person has the right not to be subjected to unreasonable or excessive force while being arrested or detained by a police officer. *Graham v. Connor,* 490 U.S. 386, 394 (1989). On the other hand, in making an arrest an officer has the right to use some degree of physical coercion or threat to effect the arrest. *Id.* at 396. Whether the force used is excessive depends on the totality of circumstances under an objective reasonableness standard. *Marion v. City of Corydon, Ind.,* 559 F.3d 700, 705 (7th Cir. 2009). Courts should consider all of the circumstances, such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect actively resists arrest or attempts to evade arrest by flight. *Graham,* 490 U.S. at 396. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 387. The Supreme Court

---

[1] Defendants themselves appear to have construed the complaint as including an individual capacity claim, as they include qualified immunity – a defense available only against individual capacity claims – as an affirmative defense in their answer. (DE # 7 at 4.)

further has counseled that it is reasonable for a law enforcement officer to use deadly force if an objectively reasonable officer in the same circumstances would conclude that the suspect posed a threat of death or serious physical injury to the officer or to others. *Tennessee v. Garner,* 471 U.S. 1, 11–12 (1985).

In support of their motion for summary judgment, defendants have submitted the affidavits of Officers Morgan and Slager, who stated that as they were chasing Szuflita while yelling "Police, Stop," Szuflita turned around with a knife when Officer Morgan was 3 or 4 feet away and made aggressive motions towards Officer Morgan with the knife. (DE # 17-3 at 2; DE # 17-4 at 2.) Morgan attested that he then backed away from Szuflita while Szuflita was "aggressively advancing towards" him, and in the process fired 9 shots at Szuflita. (DE # 17-3 at 2.) Slager stated that after Szuflita turned around with the knife approximately 3 to 4 feet from Officer Morgan, he fired 7 shots at Szuflita. (DE # 17-4 at 2.) Both officers attested that they believed they were in imminent danger of serious physical harm because Szuflita was "armed with a deadly weapon," was ignoring the officers' commands, and was making aggressive movements towards Officer Morgan while armed with the knife. (DE # 17-3 at 2-3; DE # 17-4 at 2.)

In response, plaintiffs argue that defendants have not sustained their own burden on their motion for summary judgment to demonstrate an absence of genuine disputes of material fact. (DE # 24-1 at 9.) Specifically, plaintiffs argue that neither of the officers identify the type of knife that Szuflita allegedly wielded at Officer Morgan. (*Id.*)

10

Plaintiffs argue that the knife could have been a switch blade, or it could have been a harmless plastic knife that would not have put the officers in imminent danger of serious physical harm. (*Id.*)

While a court addressing a motion for summary judgment must afford the non-movant all reasonable factual inferences, it is not required to afford the non-movant *un*reasonable factual inferences. *Bank Leumi,* 928 F.2d at 236. It is no more reasonable to infer that the officers, who attested to seeing a "knife," witnessed a plastic picnic knife than it would be to infer that an officer who attested that a suspect had a "gun" actually saw a water gun. Though the officers do not identify the precise type of knife at issue, the officers do describe the instrument as both a "knife" and a "deadly weapon." As such, it is not reasonable to infer, based on the evidence in the record, that the knife in question was a harmless plastic knife. Perhaps it could be reasonably inferred that the knife was a small knife, but even a small knife can be deadly.

In short, even taken in a light most favorable to plaintiffs, the officers' affidavits demonstrate that the officers used deadly force against Szuflita in response to the fact that Szuflita brandished a deadly weapon –here, a knife– at Officer Morgan and then moved aggressively towards Officer Morgan with the weapon in hand. A reasonable officer would conclude that Szuflita posed a threat of death or serious physical injury to at least Officer Morgan at this point, justifying the use of deadly force under the circumstances.

Thus, defendants have sustained their initial burden of informing the court of the basis for their motion and identifying the portions of the record which they believe demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Alternatively, defendants have sustained their burden by using the officers' affidavits to point out that the record contains no evidence of the unreasonableness of the officers' actions– a matter on which plaintiffs bear the ultimate burden of proof. *Id.* (movant may discharge initial burden on motion for summary judgment by showing that there is an absence of evidence to support the non-moving party's case). Either way, defendants have satisfied their burden.

In response, plaintiffs were required to set forth not merely allegations, but "fresh proof" demonstrating a genuine issue as to the reasonableness of the officers' actions. *Anderson,* 477 U.S. at 248. Plaintiffs supplied no evidence at all. Plaintiffs did not attempt to create a genuine issue of fact regarding the nature of the "knife," through deposition testimony, answers to interrogatories, affidavits, or otherwise. Therefore, plaintiffs have failed to successfully fend off defendants' motion for summary judgment on the issue of the reasonableness of the officers' actions, and summary judgment for defendants is appropriate.

In passing, plaintiffs also argue that defendants' motion for summary judgment should fail because the officers' affidavits provide no explanation as to why lesser force, such as a taser, could not have be used on Szuflita. (DE # 24-1 at 10.) However, "[t]he reasonableness of any particular governmental activity does not necessarily or

12

invariably turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette,* 462 U.S. 640, 647 (1983). As the Supreme Court aptly stated, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97. Accordingly, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* For these reasons, the focus of the inquiry in an excessive force case is whether the force used was reasonable under the circumstances, not whether some lesser, alternative use of force could have or should have been used. *Klein v. Ryan,* 847 F.2d 368, n.7 (7th Cir. 1988); *Jiron v. City of Lakewood,* 392 F.3d 410, 418 (10th Cir. 2004). Accordingly, the court rejects plaintiffs' argument that defendants should not be granted summary judgment because defendants did not put forth evidence explaining why the officers did not choose to employ some lesser, alternative force on Szuflita.

### D.    Qualified Immunity

Defendants also argue that the officers are entitled to qualified immunity for their actions. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). In this case, the court has already determined that no constitutional violations were committed by the officers in this case. Thus, as the Seventh Circuit said in *Marion v. City*

*of Corydon*, "[b]ecause there was no deprivation of a constitutional right in this case, the police officers are immune from liability." 559 F.3d 700, 706 (7th Cir. 2009).

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED.** The Clerk is directed to **ENTER FINAL JUDGMENT,** stating:

> Judgment is entered in favor of Defendants: The City of South Bend, Indiana; The South Bend, Indiana Police Department; Joshua Morgan in his official and individual capacities; and Chris Slager in his official and individual capacities; and against Plaintiffs: Estate of Brian Szuflita; Ruby D. Szuflita, individually and as the duly appointed representative of the Estate of Brian Szuflita; L.T.S., minor child of Brian Szuflita; and B.K.S., minor child of Brian Szuflita; who shall take nothing by way of their complaint.

                                    **SO ORDERED.**

Date: March 30, 2012

                                    s/James T. Moody
                                    JUDGE JAMES T. MOODY
                                    UNITED STATES DISTRICT COURT